# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN RUSSELL, | ) | CASE NO. 1:20-CV-00546 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Maureen Russell (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security (Commissioner), [1] denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 11). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.     Procedural History

On November 22, 2016, Plaintiff filed her applications for DIB and SSI, alleging a disability onset date of October 25, 2015. (R. 9, Transcript (Tr.) 181-93). The applications were

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 125-31, 134-41). Plaintiff participated in the hearing on September 26, 2018, was represented by counsel, and testified. (Tr. 35-66). A vocational expert (VE) also participated and testified. *Id*. On January 18, 2019, the ALJ found Plaintiff not disabled. (Tr. 12-30). On January 15, 2020, the Appeals Council (AC) denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 14, 15).

## II.      Evidence
### A.      Relevant Medical Evidence[2]
#### 1.      Treatment Records

Plaintiff's applications for DIB and SSI alleged disability since October 25, 2015. (Tr. 181, 188). She asserted the following conditions: stenosis in spine and back, cervical degenerative disc disease, arthritis in lumbar, vertigo, pinch nerve in right arm, right hand/fingers numbness, pain in both knees and neck. (Tr. 211). Her relevant medical records regarding these issues are summarized as follows:

| Date | Physician | Summary | Tr. |
|------|-----------|---------|-----|
| 11/28/15 | Emergency Room | **Report:** right arm pain and left side neck pain. **On Examination:** A CT scan showed "mild" bilateral degenerative uncovertebral joint disease at C3-4 with "mild" left neural foraminal stenosis, and "mild" left degenerative uncovertebral joint disease at C4-5 and C5-6 without neural foraminal stenosis. **Diagnosis:** Right arm pain and degenerative disc disease of the cervical spine. **Treatment:** Percocet and Norflex with instructions for Plaintiff to follow up | 272-95 |

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

with her primary care physician.

| 12/4/15 | Primary Care: Dr. O'Hara | **Report:** Right arm pain and numbness in her fingers. **Diagnosis:** Radicular pain in the right arm. **Treatment:** Gabapentin and Methocarbamol "as needed," and Oxycodone-Acetaminophen "as needed." | **311-13** |

| 1/11/16 | Dr. Pasha Saeed, Pain Management Specialist | **Report:** Neck, right upper extremity, and low back pain. **On Examination:** Alert, antalgic gait, limited range of motion on neck and tenderness over the cervical spine, limited range of motion of the lumbar spine and tenderness to palpation, normal muscle strength, sensation to light touch intact. X-rays of the lumbar spine were negative. X-rays of the cervical spine showed loss of the normal lordotic curvature of the cervical spine, suggesting muscle spasm; no fracture or subluxation; the spine was stable in both flexion and extension; there was moderate disc space narrowing associated with vertebral body spurring at C4-5 with mild degenerative disc disease at C3-4, C5-6, and C6-7; there was mild right-sided foraminal narrowing at C3-4 and C6-7; and the vertebral soft tissues were within normal limits. **Diagnosis:** Right cervical radiculopathy and spondylolysis of the lumbar region. **Treatment:** Relafen and Nortriptyline; scheduled for a series of cervical ES injections (three times at two-week intervals); and referred to for physical therapy. | **383-86** **432-34** |

| 1/19/16 | Dr. O'Hara | **Report:** Continued radicular symptoms down her right arm. **On Examination:** alert, normal gait, musculoskeletal examination normal with exception of tenderness to palpitation over the cervical paraspinal muscles bilaterally. | **307-10** |

| 2/1/16 | Dr. Saeed | **Treatment:** Cervical epidural steroid injection. | **381-83** |

| 2/15/16 | Dr. Saeed | **Treatment:** Cervical epidural steroid injection. | **380-81** |

| 3/10/16 | Dr. Saeed | **Treatment:** Cervical epidural steroid injection. | **377-78** |

| 4/5/16 | Dr. Saeed | **Report:** Relief from injections only lasted one to two weeks. Plaintiff advised she declined physical therapy for financial reasons. Did not want to take medication; reported 7/10 neck pain. **On Examination:** Alert and well. Antalgic gait. Normal motor and sensory. Tenderness over lumbar facets and facet loading by extension and flexion reproduced back pain. **Treatment:** Series of medial branch nerve block (MBNB) injections and levels L3-4 and L4-5 | **375-77** |

| | | | |
|---|---|---|---|
| **4/13/16** | | **Treatment:** Bilateral lumbar facet joint MBNB injections. | **373- 75** |
| **4/27/16** | | **Treatment:** Bilateral lumbar facet joint MBNB injections. | *Id.* |
| **6/1/16** | Physical Therapy Spine Evaluation | Plaintiff reported significant improvement with injections. Functional limitations with bending, recreational activities, and sleeping on the affected side. **Treatment:** Recommended two PT visits per week for two months. Plaintiff did not return. | **368-71; 365** |
| **6/7/16** | Pain Management Paul Gawry, PA-C | **Report:** Increased neck pain, worsening from physical therapy. MBNB helped for only two days. Insurance denied further MBNB injections. Radiofrequency ablation recommended for neck pain. Plaintiff stated that she could live with the neck pain. **On Examination:** Alert, normal gait, painful range of neck motion, and tenderness to palpation on the cervical spine. Mild pain to palpation on lumbar spine with good flexion and extension. **Treatment:** Recommended osteopathic or chiropractic manipulation. | **366-68** |
| **10/13/16** | Dr. O'Hara | **Report**: Chronic neck pain and inability to work. Injections and physical therapy did not help. Would consider surgery if necessary. **On Examination:** Tired and in obvious discomfort, but not in acute distress. Normal gait, tenderness to palpation over the bilateral cervical paraspinal muscles, left greater than right, normal strength in upper extremities. **Diagnosis:** Chronic (rather severe) neck pain, spinal stenosis, and low back pain. **Treatment:** Flexaril, referred to neck surgeons. | **303-06** |
| **11/8/16** | Dr. Saeed | **Report:** Neck and back pain at 8/10, injections only gave temporary relief. Not taking medications. **On Examination:** Alert, antalgic gait, tenderness over the cervical and lumbar paraspinal muscles and limited flexion and extension. **Treatment:** Gabapentin and Medrol. | **357-59** |
| **12/6/16** | Dr. Roseanna Lechner, Neurosurgeon | **Report:** Neck and lower back pain and was taking Gabapentin, Relafen, and Flexaril. **On Examination:** No acute distress, fluid speech, intact cognition, no deformity in spine, normal range of motion except cervical flexion was restricted and cervical rotation to the left and right were restricted. Decreased sensation to light touch in the fingertips of both hands, primarily in the first and middle fingers on the right. Gait was slow and antalgic. **Treatment:** Dr. Lechner ordered imaging. | **303-06** |
| **12/12/16** | MRI | **Results:** Lumbar spine unremarkable, cervical spine showed multifocal degenerative changes. | **444-47** |

4

| 12/27/16 | Dr. Lechner | **On Examination:** MRI showed degenerative changes in the cervical spine which would not require surgery. Lower back unremarkable and would not require surgery. **Diagnosis:** Chronic neck and lower back pain. **Treatment:** Continue with pain management, referred to physical therapy, approved the use of an ablation procedure. If tolerated, increase Gabapentin, prescribed Robaxin. | **493-95** |

| 2/20/17 | Dr. O'Hara | **Report:** Discussed concern of Nabumetone side effects, prescribed by pain management for neck pain. Requested Xanax for nerves regarding flight to Mexico. **Treatment:** Gabapentin and Methocarbamol, prescribed a soft cervical collar; prescribed Xanax for anxiety, fear of flying; referred to pain management. | **517-21** |

| 3/6/17 | Dr. Deborah Blades | **Report:** Neck pain, problems with head-turning, flexion, and extension; driving difficulties; pain at a 7/10. **On Examination:** Normal gait, obvious pain with head turning and remained stiff while seated. Decreased range of neck motion, significant cervical paraspinal muscle spasm, left greater than right. Good bilateral strength, normal coordination, normal sensation to light touch in all extremities. Alert, cooperative, normal mood and affect, normal attention span and concentration, fluent speech, intact cognition. X-ray of cervical spine showed no fracture or subluxation of the cervical spine, "mild" multilevel degenerative disc disease most pronounced at C4-5, no spondylolisthesis; and "no instability" on flexion or extension. **Diagnosis:** Neck pain. **Treatment:** Meloxicam and Robaxin. | **465-72** |

| 3/9/17 | Dr. Blades | **Examination:** CT scan of the cervical spine showed multilevel mild degenerative changes. | **443** |

| 4/3/17 | Dr. Blades | **Report:** Neck pain, particularly with turning her head. **On Examination:** No acute distress, normal gait, decreased range of neck motion, bilateral cervical spasm, good strength. Alert, cooperative; normal mood and affect, normal attention span and concentration, fluent speech, intact cognition. **Treatment:** Meloxicam and Robaxin. | **459-61** |

| 1/9/18 | Dr. Lechner | **Report:** Increased neck pain. **On Examination:** Normal range of motion except restricted cervical flexion and rotation to the left and right. Decreased sensation to light touch in the fingertips of both hands, primarily in the first and middle fingers on the right. Slow, antalgic gait. Cervical MRI from November 21, 2017, showed a new C5-6 disc herniation, worse to the left, and the other levels | **490-92** |

5

|       |             | were stable in comparison to December 2016 MRI. Disc at the *C5-6* level had increased in size, which could explain worsening symptoms. **Treatment:** Recommended surgery to remove the disc and take the pressure off the nerves, but not urgent. Plaintiff wanted to hold off on surgery. If symptoms worsened, she should be seen right away. |        |
| 6/8/18 | Dr. O'Hara | **Report:** Considered neck surgery but does not want to do surgery. Asked for neurology referral for neck pain. **Examination:** Alert, normal gait, tenderness to palpation over the bilateral cervical paraspinal muscles. **Treatment:** Gabapentin and Meloxicam and referred to neurology. | 506-08 |

### 2.    Medical Opinions Concerning Plaintiff's Functional Limitations

State Agency Drs. Teresita Cruz and Bradley Lewis reviewed Plaintiff's records on February 14, 2017 and May 30, 2017, respectively. (Tr. 73-75, 99-101). Drs. Cruz and Lewis opined that Plaintiff retained the ability to perform light exertional work with some postural limitations: no more than occasional overhead reaching and no exposure to hazards such as moving machinery, commercial driving, and unprotected heights. (*Id.*).

On June 19, 2017, Plaintiff underwent a psychological consultative examination conducted by Dr. Julie Janco-Gidley. (Tr. 455-56). Upon examination, Dr. Janco-Gidley diagnosed Plaintiff with generalized anxiety disorder, social anxiety disorder, and major depressive disorder-recurrent, moderate. (Tr. 456). Based upon her interview with Plaintiff, Dr. Janco-Gidley opined that Plaintiff: would be okay with simple instructions and may benefit from written instructions; may take more time to perform tasks; is able to respond to supervision and others in the work setting; and has difficulty responding to pressure in the work setting. (Tr. 456).

On July 5, 2017, State Agency Psychologist Dr. Robyn Murry-Hoffman reviewed the record and opined that Plaintiff: was capable of performing tasks that did not have strict production demands or sustained fast pace; could interact adequately with others but might be overly sensitive

to criticism; would perform better in an environment with infrequent changes with advance notice given; and could do simple, routine tasks in an environment where contact with others was superficial and infrequent. (Tr. 102-03). Dr. Murry-Hoffman cited to Dr. Janco-Gidley's consultative evaluation report regarding supportability and consistency. (Tr. 99).

On July 14, 2017, Dr. Blades completed a Medical Source Statement. (Tr. 476-80). Dr. Blades had treated Plaintiff since March of 2017, for neck pain and articular arthritis. Dr. Blades opined that Plaintiff would be off-task 25% or more of the workday due to symptoms likely severe enough to interfere with the attention and concentration needed to perform even simple work tasks; and that Plaintiff would miss more than four workdays per month due to impairments or treatment. Dr. Blades did not fill out most of the form regarding functional limitations if Plaintiff were placed in a work situation. (Tr. 477-78).

On January 10, 2018, Dr. Lechner completed a Medical Source Statement. (Tr. 484). Dr. Lechner had seen Plaintiff three times and noted the diagnosis of cervical spondylosis with cervical disc herniation. (Tr. 484). Dr. Lechner opined that Plaintiff: could stand/walk for less than two hours; could sit for about two hours in an eight-hour workday; needed to shift positions at will; needed unscheduled breaks two to three times per day of five to ten minutes each; could occasionally lift/carry less than ten pounds, and rarely lift and carry ten pounds; could use her hands to grasp, turn, or twist objects 10% of the work day; could use her fingers for fine manipulation 10% of the work day, and could use her arms to reach in front 5% of the work day; could not use her arms to reach overhead; would be off-task 25% of the work day due to symptoms likely to be severe enough to interfere with the attention and concentration needed to perform even simple work tasks; and would miss more than four work days per month due to her impairments or treatment. (Tr. 486-87).

**B.**     **Relevant Hearing Testimony**

At the September 26, 2018 hearing, Plaintiff testified as follows:

- She last worked on Thanksgiving of 2015, when she left her job due to pinched nerve pain. (Tr. 44). It was difficult for her to hold her head up or turn it from side to side; she could not lift more than five pounds; and she had problems with her dominant right hand that caused her to drop things. (Tr. 50, 57).

- She considered surgery but was concerned about the risks. She decided to have the surgery when the pain increased but learned that Dr. Lechner "was moving onto other avenues." (Tr. 51).

- Physical therapy made her pain worse, "pain shots" did not help, and she did not take pain medications due to side effects. She explained that her pain was only relieved by lying down and using a heating pad. (Tr. 51-52). She spends most of her day using a heating pad. (Tr. 53).

- She tries to perform household activities like washing dishes, cooking, and laundry; and tries to go grocery shopping. (Tr. 53). She tries to read and use the computer, but it is hard to look down due to her neck pain. (Tr. 54).

- She has not treated for depression, but stated she was depressed that she could not do all the things she used to do. (Tr. 60).

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> [P]lease assume an individual the claimant's age, education, and work experience, and if you can please assume that this individual can perform the full range of light work with the additional following limitations. This individual can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, frequently balance, occasionally stoop, and occasionally crawl. This individual can frequently kneel and crouch. This hypothetical individual can occasionally reach overhead bilaterally. He or she should never be exposed to unprotected heights, dangerous machinery, and commercial driving.

(Tr. 62). The VE testified that such an individual could perform Plaintiff's past jobs as typically performed, and could perform other jobs such as wire worker (light work, unskilled, DOT Number 728–684-022, with 105,000 jobs in the national economy), electronics worker (light work,

unskilled, DOT Number 726–687-010, with 60,000 jobs in the national economy), or electrical assembler (light work, unskilled, DOT Number 729–687-010, with 55,000 jobs in the national economy). (Tr. 62-3). The ALJ modified the hypothetical questions by adding that the person would be limited to simple, routine tasks, but not at a production pace, have frequent interaction with supervisors, and occasional routine workplace changes. (Tr. 63). The VE testified that the added limitations would eliminate Plaintiff's past work, but the other jobs would remain. (*Id.*).

Plaintiff's attorney added the following limitation to the ALJ's first hypothetical— that the person could only occasionally perform activities that involve head and neck motion. (Tr. 63-4). The VE testified that that person could still perform the listed jobs. The VE testified that being off task 25% of the time would be unacceptable and a person could not sustain work activity if she missed four days of work per month. (*Id.*). In addition, according to the VE, no jobs would be available if the first hypothetical individual could only occasionally perform activities involving gripping, handling, and fingering with the right dominant extremity and frequent with the left non-dominant extremity. (Tr. 64-5).

## III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

The ALJ made the following findings and fact and legal conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.

2. The claimant has not engaged in substantial gainful activity since December 31, 2015, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and dysfunction of major joints (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping; frequent kneeling and crouching; occasional crawling; occasional reaching overhead bilaterally; and no exposure to unprotected heights, dangerous machinery, or commercial driving.

6. The claimant is capable of performing past relevant work as an office clerk, bartender, and bar manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1964 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2015, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

(Tr. 17-30).

## V.     Law and Analysis

### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

11

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.** **Plaintiff's Assignments of Error**

**1.** **Plaintiff's First Assignment of Error**

Plaintiff's first assignment of error is framed as a general challenge to the ALJ's evaluation of the evidence. (R. 13, PageID# 595). This assignment of error combines several distinct arguments, but Plaintiff's major focus in on the weight afforded to various medical opinions. Thus, the court reviews the ALJ's discussion of the medical opinions of consultative examiner, Dr. Julie Janco-Gidley, reviewing psychologist, Dr. Robyn Murry-Hoffman, Dr. Blades, and Dr. Lechner. (R. 13, PageID# 600).

According to regulations applicable to claims filed prior to March 27, 2017, an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. "Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if [the ALJ] finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (citing *Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir.

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed after that date. 82 *Fed. Reg.* 5844-5884.

2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it heavily relied on the patient's complaints.)

An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(c), 416.927(c). State agency psychological consultants are considered highly-qualified experts in disability evaluation, and the ALJ must explain any rejection of the state-agency doctor's opinions. The ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. §§§ 404.1527(c), 416.927(c); *see generally Gayheart*, 710 F.3d at 376; *Cole*, 661 F.3d at 937. More weight is generally given to the opinion of an examining source than to the opinion of a source who has not examined the claimant. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

### a)    Dr. Julie Janco-Gidley

Plaintiff argues that the ALJ erred in giving psychological consultative examiner Dr. Julie Janco-Gidley's opinion little weight because she reiterated what Plaintiff told her rather than rendering her own professional opinion. (R. 13, PageID# 596). Plaintiff also contends that the ALJ erred at Step Two by not categorizing her mental impairments as severe based upon Dr. Janco-Gidley's opinion. (R. 13, PageID# 596). These arguments are without merit, as explained *infra*.

Notably, Dr. Janco-Gidley is not a treating physician for purposes of the "treating physician" rule. A treating physician is defined as a physician (or psychologist) who has provided

medical treatment or evaluation, and who has an "ongoing treatment relationship" with the patient. *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 2005 WL 2739084, at *5 (6th Cir. 2005) (citing 20 C.F.R. § 404.1502); *Bryant v. Astrue*, No. 2:09-00093, 2010 U.S. Dist. LEXIS 60342, 2010 WL 2901842, at *2 (M.D. Tenn. July 19, 2010) (citing 20 C.F.R. § 416.902). A treating physician relationship cannot arise from a single visit. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Psychologist Dr. Janco-Gidley conducted a single psychological consultative examination with Plaintiff. (Tr. 449-456). Therefore, the ALJ was not required to give the psychologist's evaluation special deference under the treating physician rule but was required to consider the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), namely, supportability and consistency. Plaintiff's argument with regard to the ALJ's review of Dr. Janco-Gidley's opinion is that the ALJ erred "when she did not consider this evidence and find that Russell had a severe impairment of depression and anxiety[,]" and that the ALJ "failed to provide support for her conclusions that Dr. Janco-Gidley did not render her own professional opinion when the doctor proffered her opinion regarding Russell's diagnoses and abilities to perform work activities." (R. 13, PageID# 597-98).

The ALJ fully addressed and considered Dr. Janco-Gidley's opinion as follows:

On June 19, 2017, the claimant attended a psychological consultative examination conducted by Julie Janco-Gidley, Ph.D. The claimant reported that she had a "bunch of anxiety lately." She also reported anxiety symptoms since she was young; she felt anxious "all the time"; she had problems with concentration; and she had depression because she could not work. The claimant had no significant behavioral health history and she admitted taking Xanax only one or two times. On examination, the claimant's hygiene and grooming were good. She was friendly and cooperative. Her mood appeared depressed and her affect appeared in the normal range. She was tearful at times. She demonstrated some anxious behaviors such as some fidgeting and asking questions to reassure herself or che[c]k in with the evaluator about the evaluator's perception of her. She spoke reasonably well with no looseness of associations or tangentiality. There was no poverty in her speech concerning content or amount. She expressed herself in a clear and

appropriate manner. Her speech appeared fluent and quality of voice appeared clear. She displayed adequate expressive and receptive language skills. Her thought processes appeared logical and coherent. She made good eye contact. In terms of sensorium and cognitive functioning, she appeared oriented to person, place, and time; she was able to spell a simple word both forwards and backwards; in terms of attention and concentration, she could do simple calculations and serial 3s from 20; in terms of recent and remote memory, she recited three objects immediately after presentation and after five minutes and she recalled 5 digits forward and 5 digits backwards; her cognitive functioning was estimated to be in the low average range based on presentation and education and work histories; and her general fund of information appeared to be appropriate to experience. Her insight and judgment seemed adequate and she seemed to know right from wrong. Dr. Janco-Gidley diagnosed generalized anxiety disorder, social anxiety disorder, and major depressive disorder, recurrent, moderate (7F).

Regarding the four work-related mental abilities, Dr. Janco-Gidley expressed the opinion that (1) the claimant reports having a "rough time" with being able to understand, remember, and carry out instructions, but states she probably would be "ok" with simple instructions. She seems likely would be able to understand and follow simple directions presented one at a time, if able to do so immediately, but seems likely to struggle if directions are more complex or when there is a delay in when the instructions are given and when they need to be executed. She may benefit from written instructions that she could refer back to; (2) the claimant reports some difficulty maintaining attention and concentration adequately. Therefore, she may take more time than peers to perform tasks, especially if tasks are difficult or involve multiple steps. As stated above, she may benefit from written instructions/checklists that she could refer back to frequently to address reported attention and memory problems. Regarding persistence, the claimant reported that when faced with a difficult task, "I get upset and then I cry because I think I am an idiot ...like all this technology my friends try to teach me and I don't get it and then I don't want to do it anymore"; (3) the claimant seems able to respond to supervision and others in the work setting and reports no prior major difficulty in these areas, describing relationships with supervisors and co-workers as "very good"; and ( 4) the claimant seems to have some difficulty responding to pressure in the work setting. The claimant states that when she was working, she would get nervous, but would and try to get everything done. She questioned whether feeling like she had to get everything done quickly or having to say something quickly to get it all out was a sign of anxiety and commented that she always thought it was a good work ethic. Regarding stress in general, the claimant reports that if it is her own stress she has a hard time dealing with it, but if it is other people's stress, she likes to calm people down and wants others to feel good. She also appears frustrated and depressed due to her reported decreased physical functioning and inability to work and be self-sufficient in areas she has been in the past (7F/8-9).

I give little weight to Dr. Janco-Gidley's opinion because, for the most part, she

> simply reiterated what the claimant told her as opposed to rendering her own professional opinion.

(Tr. 18-9).

The ALJ explained that he afforded Dr. Janco-Gidley's opinion little weight because she "simply reiterated what the claimant told her as opposed to rendering her own professional opinion." (Tr. 19). The ALJ notes that Plaintiff "had no significant behavioral health history" and that the record does not support any mental health treatment, with the exception of Plaintiff taking Xanax "once or twice" for her fear of flying. (Tr. 18-19). The ALJ's decision subsequently explains that "[a]lthough the claimant reported multiple symptoms to Dr. Janco-Gidley, the mental status examination was generally unremarkable." (Tr. 19).

Finally, the ALJ determined that Plaintiff's statements regarding symptoms of her mental impairment were not as severe as alleged. (Tr. 19-20) "While the claimant may exhibit some difficulty regulating her emotions, the claimant has not been psychiatrically hospitalized and she has not required or received any outpatient mental health services. Furthermore, there is no evidence of violent outbursts or self-injurious behavior." (Tr. 20).

Accordingly, the ALJ considered the necessary factors under 20 C.F.R. §§ 404.1527(c), 416.927(c), including supportability and consistency with the record when addressing the opinions of psychological consultant Dr. Janco-Gidley, and did not err at Step Two by not categorizing Plaintiff's mental impairments as severe.

### b)      Dr. Robyn Murry-Hoffman

Plaintiff contends that the ALJ erred by giving State Agency reviewing psychologist Dr. Robyn Murry-Hoffman's opinion little weight. (R. 13, PageID# 596-97). Plaintiff also contends that the ALJ erred at Step Two for failing to categorize her mental impairments as severe based

upon Dr. Murry-Hoffman's opinion. (R. 13, PageID# 596). These arguments are without merit.

Relevant to this issue, the ALJ stated:

> On July 5, 2017, Robyn Murry-Hoffman, Ph.D., reviewed the claimant's case file at the request of the State agency, the Division of Disability Determination Services. Dr. Murry-Hoffman expressed the opinion that the claimant has severe mental impairments and the claimant can complete tasks that do not have strict production demands and no sustained fast pace needed; can interact adequately with others but may be over-sensitive to criticism; changes in tasks would be better handled with advance notice of infrequent changes; and she retains the mental ability for simple, routine tasks in an environment where contact with others is superficial and infrequent (5A and 6A).

> I give little weight to Dr. Murry-Hoffman's opinions because they are based on the one-time examination by Dr. Janco-Gidley and they are not consistent with the record as a whole which indicates no treatment by a mental health professional and taking Xanax only once or twice. As recounted above, in October 2016, the claimant's primary care physician Janet O'Hara, M.D., noted that the claimant's mood and affect were "slightly down" (2F/10). In February 2017, Dr. O'Hara prescribed Xanax for "anxiety, fear of flying" per the claimant's request as she was flying to Mexico in the near future. The claimant only took Xanax once or twice. Although the claimant reported multiple symptoms to Dr. Janco-Gidley, the mental status examination was generally unremarkable.

(Tr. 19). Plaintiff does not make a stand-alone argument that the ALJ erred in determining the weight of Dr. Murry-Hoffman's opinion. Rather, she references this opinion in combination with her argument regarding Dr. Janco-Gidley. (R. 13, PageID# 597-98). According to Plaintiff, because the ALJ erred in reviewing Dr. Janco-Gidley's opinion, the ALJ also erred in reviewing Dr. Murry-Hoffman's opinion. As concluded above, however, the ALJ did not err by assigning Dr. Janco-Gidley's opinion little weight. The ALJ correctly noted that Dr. Murry-Hoffman pointed to Plaintiff's consultative examination with Dr. Janco-Gidley to support her conclusions. (Tr. 19; Tr. 102-103). Because the ALJ found the consultative examination opinion was not supported by or consistent with the record, the ALJ did not err in concluding that opinions based on these conclusions are also inconsistent with and not supported by the record. Accordingly, Plaintiff's

argument is without merit.

### c)      Dr. Deborah Blades

Plaintiff asserts that the ALJ erred by assigning little weight to the Physical Medical Source

Statement of Dr. Blades. (R. 13, PageID# 599-600).

The ALJ analyzed Dr. Blades' opinion as follows:

On July 14, 2017, Dr. Blades completed a form about the claimant's physical
capabilities. Dr. Blades stated that she had treated the claimant since March
2017. She provided diagnoses of neck pain and articular arthritis. She reported
the claimant's symptoms as "severe, unremitting neck pain with head and neck
motion." She opined that the claimant would be off-task 25% or more of the
workday due to symptoms likely to be severe enough to interfere with the
attention and concentration needed to perform even simple work tasks; and the
claimant would miss more than four workdays per month due to impairments
or treatment (9F).

I give little weight to Dr. Blades's opinion because it is not consistent with her
own findings— as recounted above, Dr. Blades consistently documented that
the claimant was "alert"; her attention span and concentration were "normal";
and her cognition was "intact." Furthermore, the absenteeism rate is not
consistent with the "mild" and "moderate" findings on imaging (see above) or
the limited course of treatment.

(Tr. 25).

If fully explained with appropriate citations to the record, a good reason for discounting a

treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and

is inconsistent with the rest of the evidence." *Conner,* 658 Fed. App'x at 253-254. These good

reasons must be supported by evidence in the record and be sufficiently specific to make clear the

weight assigned to the treating physician's opinion, and the reason for that weight. *Gayheart,* 710

F.3d 376; *Blakley,* 581 F.3d at 406-407; *Winning,* 661 F. Supp.2d at 818-819.

Plaintiff summarily states that the ALJ failed to comply with the treating physician

regulations "when she accorded the opinions of the treating sources…only little weight without

sufficient explanation." (R. 13, PageID# 603). In addition, Plaintiff contends that "[c]ontrary to the contention of the ALJ, there were examination records supporting" Dr. Blades' conclusions. (R. 13, PageID# 601). Specifically, Plaintiff asserts "Dr. Blades treated Russell for her neck pain with exams noting problems with turning her head, decreased range of motion, and neck pain (Tr. 459, 460, 461, 467, 469, 471)." (R. 13, PageID# 600).

The ALJ, however, considered and discussed the records referenced by Plaintiff, summarizing them as follows:

> On March 6, 2017, the claimant consulted with Deborah Blades, M.D., with a chief complaint of neck pain. The claimant reported that the problem began approximately in October 2015 and denied any accidents or injuries near that time. The claimant stated that she had pain with head turning, flexion, and extension; driving had become quite difficult as she had difficulty with turning her head particularly to the left; she described the intensity as a 7/10; she denied extremity weakness and pain, but admitted to headaches associated with neck pain. The claimant described her pain as constant, achy, throbbing, and cramping. She also complained of low back pain. On examination, the claimant's gait was normal. She was in obvious pain with head turning and she remained "fairly" stiff while seated. There was decreased range of motion of the neck. There was significant cervical paraspinal muscle spasm, left greater than right. Her strength was good bilaterally and coordination was normal. Sensation in all extremities was within normal limits to light touch. The claimant was alert and cooperative; her mood and affect were normal; her attention span and concentration were normal; her speech was fluent; and her cognition was intact. Dr. Blades diagnosed neck pain. She recommended the claimant undergo x-rays and a CT scan. She prescribed Meloxicam and Robaxin and she asked the claimant to return after the imaging was completed (8F/10-15).
>
> On March 6, 2017, x-rays of the cervical spine showed no fracture or subluxation of the cervical spine; "mild" multilevel degenerative disc disease most pronounced at C4-5; no spondylolisthesis; and "no instability" on flexion or extension (8F/9).
>
> On March 9, 2017, a CT scan of the cervical spine showed multilevel mild degenerative changes (6F/2).
>
> On April 3, 2017, the claimant returned to see Dr. Blades reporting continued

> neck pain particularly with head turning. On examination, the claimant was in
> no acute distress. Her gait was normal. There was decreased range of motion of
> the neck. There was bilateral cervical spasm. Her strength was good. The
> claimant was alert and cooperative; her mood and affect were normal; her
> attention span and concentration were normal; her speech was fluent; and her
> cognition was intact. Dr. Blades continued Meloxicam and Robaxin (8F/2-4).

(Tr. 25). Plaintiff does not contest the accuracy of ALJ's summary of Dr. Blades' treatment notes.

The ALJ concluded that Dr. Blades' opinion—that Plaintiff's neck pain would cause her to be off task 25% of the workday due to symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks and to miss more than four days of work per month for impairments or treatment—was inconsistent with Dr. Blades' treatment records that "consistently documented" that despite neck pain, Plaintiff "was 'alert'; her attention span and concentration were 'normal'; and her cognition was 'intact.'" (Tr. 25). Further, the ALJ determined that Dr. Blades opining that Plaintiff would miss four days of work per month due to the impairment or treatment was contradicted by the limited course of actual treatment and the mild and moderate findings on the X-Ray and CT scan. (*Id.*).

A decision supported by substantial evidence will not be overturned even if substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512. Plaintiff's arguments invite the court to re-weigh the evidence, but the court does not review evidence *de novo*, make credibility determinations, or reweigh the evidence. *Brainard*, 889 F.2d at 681. The ALJ sufficiently set forth the reasons for assessing Dr. Blades' opinion little weight. *Gayheart*, 710 F.3d 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F. Supp.2d at 818-819.

### d)    Dr. Rosanna Lechner

Plaintiff asserts that the ALJ erred by assigning little weight to the Physical Medical Source Statement of Dr. Lechner. (R. 13, PageID# 599-600). The ALJ discussed Dr. Lechner's opinion as

follows:

On January 10, 2018, Dr. Lechner completed a form about the claimant's physical capabilities. Dr. Lechner stated that she had seen the claimant three times. She provided diagnoses of cervical spondylosis with cervical disc herniation. She reported the claimant's symptoms as "neck pain and arm pain, stiffness, hand numbness." She opined that the claimant can stand/walk for less than 2 hours of an 8-hour workday and sit for about 2 hours; needs to shift positions "at will": will need unscheduled breaks two to three times per day, 5 to 10 minutes each; occasionally lift/carry less than 10 pounds and "rarely" lift/carry 10 pounds; can use her hands to grasp, turn, or twist objects 10% of the workday; can use her fingers for fine manipulation 10% of the workday; can use her arms to reach in front 5% of the workday; cannot use her arms to reach overhead; the claimant would be off-task 25% or more of the workday due to symptoms likely to be severe enough to interfere with the attention and concentration needed to perform even simple work tasks; and the claimant would miss more than four workdays per month due to impairments or treatment (11F).

I give little weight to Dr. Lechner's opinion because such severe limitations are not consistent with the findings on examination or course of treatment. While Dr. Lechner documented that the claimant's gait was slow and antalgic, other providers usually documented that her gait was normal. The claimant has good strength. Regarding fine manipulation, the sensory examination showed decreased sensation to light touch in the "fingertips" of both hands, but primarily only in the first and middle fingers on the right.  As for the off-task rate, Dr. Lechner documented that the claimant's cognition was "intact." Furthermore, the absenteeism rate is not consistent with the "mild" and "moderate" findings on imaging up until November 2017 or the overall limited course of treatment. However, in January 2018, Dr. Lechner reviewed a cervical MRI from November 21, 2017 and compared it with the prior study from December 2016. There was a "new" *C5-6* disc herniation, worse to the left, and the other levels were stable. Dr. Lechner explained to the claimant that the disc at the *C5-6* level had increased in size since her last MRI, which could explain her worsening symptoms. She recommended surgery to remove the disc and take the pressure off the nerves, but the claimant opted to "hold off for now" with surgery. Dr. Lechner cautioned the claimant that if her symptoms worsened, she should be seen "right away" (12F/2-4). The claimant did not return to see Dr. Lechner after this date and she did not return to see any medical provider until June 2018 after taking a vacation to the Dominican Republic (see below). From all of this, I find that the

> claimant's symptoms and limitations are not as severe as alleged and I give little weight to Dr. Lechner's opinion.

(Tr. 26).

The ALJ set forth sufficient reasons to explain her assessment that Dr. Lechner's opinion was inconsistent with the objective medical evidence and was entitled to little weight. Specifically the ALJ concluded the following: the doctor's opinion that Plaintiff would be off-task 25% of the time was inconsistent with her reports that Plaintiff's cognition was intact (Tr. 26, 486, 498); Dr. Lechner's opinion that Plaintiff was severely limited with regard to fine manipulation was inconsistent with her findings that Plaintiff had only decreased sensation to light touch in her finger tips, primarily in her first and middle fingers on her right hand (Tr. 26, 486-87, 498); Dr. Lechner's opinion regarding absenteeism, similar to Dr. Blades', was inconsistent with mild and moderate imaging in November of 2017, her limited treatment, Plaintiff's decision to hold off on surgery, and Plaintiff's decision not to seek any further medical treatment after her appointment with Dr. Lechner in January of 2018 until June 2018, after she returned from a vacation to the Dominican Republic. (Tr. 26-27, 486-87, 492, 506).

Based upon the foregoing, the court finds that the ALJ complied with the treating physician regulations and set forth sufficient reasons to explain her assessment. *Gayheart*, 710 F.3d 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F. Supp.2d at 818-819.

### e)  Step Three

Plaintiff asserts that the ALJ erred at Step Three by finding that her combined severe physical impairments did not meet a listed impairment. (R. 13, Page ID# 598). At Step Three, the ALJ stated:

> While the record indicates that the claimant has severe impairments, none reaches the level of severity required by the Listing of Impairments, either singly or in combination. No treating or examining physician indicated

> findings consistent with the record as a whole that would satisfy the severity requirements of one of the listed impairments on 20 CFR Part 404, Subpart P, Appendix 1. In reaching this conclusion, I considered the opinions of the State agency medical and psychological consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process (Exhibits IA, 2A, 5A and 6A) and reached the same conclusion (20 CFR 404.1527(e)and 416.927(e)).
>
> In particular, I considered the claimant's physical impairments under the requirements of Listing 1.02 regarding the major dysfunction of a joint, but the claimant's impairments do not result in the claimant being unable to perform fine and gross movements effectively and/or being extremely limited in the ability to walk as required by 1.00B2b.
>
> I also considered the claimant's physical impairments under the requirements of Listing 1.04 regarding disorders of the spine, but there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain with motor loss, sensory or reflex loss, and positive straight-leg raising testing (both sitting and supine) or spinal arachnoiditis. Furthermore, the claimant is not extremely limited in the ability to walk as required by 1.00B2b.

(Tr. 20).

Plaintiff contends that she "was unable to perform fine and gross movements effectively" due to issues with her cervical spine. (R. 13, PageID# 598-99). She asserts that the ALJ did not include limitations related to fine and gross movements and therefore failed to "consider the combined effects of her lumbar and cervical spine issues [, which] constituted harmful error requiring either a finding of disability or remand." (R. 13, PageID# 598-99). Although Plaintiff attempts to support this contention by arguing that the ALJ erred when determining the weight applicable to Dr. Blades and Dr. Lechner's medical opinions (R. 13, PageID# 600), Plaintiff's assertion remains unpersuasive. The court has concluded above that the ALJ properly considered and weighed these medical opinions. This court's role in considering a social security disability appeal does not include reviewing the evidence *de novo*, making credibility determinations, or

reweighing the evidence. *Brainard,* 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 U.S. Dist. LEXIS 147362, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence beseech district courts to perform a forbidden ritual."), report and recommendation adopted, 2017 U.S. Dist. LEXIS 146332, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Further, Plaintiff does not identify a specific listing that she contends her combined impairments would have met. See *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014) ("[T]he claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing…. Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three"); *see also United States v. Catlan*, 499 F.3d 606, 606 (6th Cir. 2007) (undeveloped arguments are waived).

The court concludes that Plaintiff's first assignment of error is without merit.

### 2.    Plaintiff's Second Assignment of Error

Plaintiff contends that the ALJ erred at Step Four by concluding that she could perform her past work, and, in the alternative, that the ALJ erred at Step Five. (R. 13, PageID# 604). At Step Four, an ALJ considers a claimant's past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). If she can perform her past relevant work, she is not disabled at Step Four and the inquiry stops. If she cannot perform her past relevant work, then the ALJ moves on to Step Five to determine if there exists other work the Plaintiff can perform when considering her residual functional capacity (RFC). If there are a substantial number of such jobs in the national economy, then the Plaintiff is not considered disabled under the Act. 20 C.F.R. §§ 404.1520(g) and

416.920(g), 404.1560(c).

Here, although the ALJ determined that Plaintiff was able to perform her past relevant work and therefore not disabled at Step Four, the ALJ also continued to Step Five of the sequential analysis. (Tr 28). Therefore, any error at Step Four is harmless so long as the ALJ properly concluded that Plaintiff could perform other work in the economy. *Davis v. Sec'y, HHS*, 915 F.2d 186, 188-189 (6th Cir. 1990); *see also Lagore v. Colvin*, No. 4:12CV2626, 2014 U.S. Dist. LEXIS 48343, 2014 WL 1383339, at *17 (N.D. Ohio Apr. 8, 2014) (harmless error if the ALJ erred by finding claimant could return to prior relevant work, because the ALJ proceeded to Step Five and determined claimant could perform a significant number of jobs in the national economy); *Jordan v. Colvin*, No. 3:12CV412, 2013 U.S. Dist. LEXIS 119823, 2013 WL 4509705, at *9 (E.D. Tenn. Aug. 23, 2013) (same); *Stull v. Astrue*, No. 3:10CV693, 2011 U.S. Dist. LEXIS 21573, 2011 WL 830633, at *6 (N.D. Ohio Jan. 18, 2011), adopted by 2011 U.S. Dist. LEXIS 21397, 2011 WL 830541 (N.D. Ohio Mar. 3, 2011) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008)) (same).

Plaintiff asserts that if she was limited to simple, routine, and repetitive work, she could not return to her past relevant work as an office clerk, bar tender, or bar manager. (R. 13, PageID# 604-5). Thus, her argument is that if limitations were *added* to the RFC, then the ALJ erred at Step Four. (R. 13, PageID# 605). In other words, Plaintiff challenges the ALJ's RFC determination.

### a)     The RFC

Plaintiff's second assignment of error asserts that the RFC is not supported by substantial evidence, but it is premised upon the arguments in her first assignment of error, namely that the ALJ erred assessing the weight of the medical opinions. (R. 13, PageID# 605-06). As explained

herein, Plaintiff's assertion lacks merit.

The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a).[4] The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The ALJ's hypothetical questioning to a vocational expert during an administrative hearing must accurately set forth the individuals physical and mental impairments that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to

---

[4] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x. 498, 505 (6th Cir. 2013) (internal citations omitted)).

the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010)) (same), *adopted by* 2011 WL 441518 (Feb. 4, 2011) (Gaughan, J).

Further, an ALJ is not required to discuss every piece of evidence in the record to support the decision, but she must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)). SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

Plaintiff contends that the evidence in the record and at the hearing regarding her depression and anxiety support a conclusion that she had a moderate limitation in her ability to concentrate, persist, or maintain pace, and a moderate limitation in her ability to interact with others. (R. 13, PageID# 605). Accordingly, Plaintiff argues, the RFC should include limitations to simple, routine, and repetitive tasks. (*Id.*). Continuing, Plaintiff argues that because the ALJ erred in according little weight to the opinions of the treating physicians, examining psychologist, and reviewing psychologist, the ALJ failed to limit her to unskilled work or to include the limitations

stated by Dr. Blades and/or Dr. Lechner. (R. 13, PageID# 606). Thus, Plaintiff asserts that the ALJ failed to sustain her burden at Step Five by not "include[ing] all of Plaintiff's limitations into her hypothetical question/RFC." (R. 15, PageID# 638). As such, Plaintiff relies upon the same arguments already addressed above.

The ALJ's RFC discussion encompasses over seven pages of the underlying decision and is not limited to the medical opinions from Drs. Janco-Gidley, Murry-Hoffman, Blades, and Lechner. (Tr. 20-27). The ALJ thoroughly explained the reasoning underlying the weight afforded to these medical opinions and why he rejected the limitations at issue. (*Id.*). The court has discussed and dismissed Plaintiff's argument that the ALJ erred in assessing these medical opinions. A "plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination." *White v. Colvin*, No. 3:13-cv-02106, 2014 U.S. Dist. LEXIS 142152, at *17-18 (N.D. Ohio July 21, 2014). The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected, and the ALJ determined the RFC based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009).

Plaintiff's arguments would require the Court to impermissibly review the evidence *de novo*, make credibility determinations, and re-weigh the evidence. *Brainard*, 889 F.2d at 681. Therefore, Plaintiff's second assignment of error is without merit.

**VI.**     **Conclusion**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 28, 2021